AO 91 (Rev. 11/11) Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
Middle District of Alabama

United States of America
v.
JAQUEZ MYRICK

*Defendant(s)*

Case No. 3:24mj339·SMD

FILED
NOV 11 2024
CLERK
U.S. DISTRICT COURT
MIDDLE DIST. OF ALA.

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.
On or about the date(s) of **November 10, 2024** in the county of **MACON** in the **MIDDLE** District of **ALABAMA**, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 922(o) | Possession of a Machinegun |

This criminal complaint is based on these facts:
Please see attached Affidavit.

☒ Continued on the attached sheet.

*Complainant's signature*

Andrew Erdmann, ATF Special Agent
*Printed name and title*

Subscribed and sworn to electronically in my presence:

Date: 11/11/2024

*Judge's signature*

City and state: Montgomery, AL

Stephen M. Doyle, U.S. Magistrate Judge
*Printed name and title*

MIDDLE DISTRICT OF ALABAMA

MONTGOMERY, ALABAMA

**AFFIDAVIT IN CRIMINAL COMPLAINT**

I, Andrew Erdmann, being duly sworn, depose and state the following:

1. I am a Special Agent and Certified Explosives Specialist with the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF"). I have been so employed since December 2016. I have a bachelor's degree in criminal justice from the University of South Alabama and a master's certificate in explosives forensics from Oklahoma State University. I have previously served as a police officer and detective for six years with the Mobile Police Department in Alabama. During this time, I was involved in numerous search and arrest warrants. I am a graduate of the Federal Law Enforcement Training Center and the ATF National Academy located in Glynco, Georgia, the Federal Law Enforcement Training Center, Criminal Investigator Training Program, and the ATF Special Agent Basic Training Academy. I make this affidavit in my official capacity as a Special Agent with the ATF. This affidavit is based upon my present knowledge obtained during my investigation as well as information provided to me by other law enforcement officers.

2. During July 2023, I began investigating several recoveries of machine gun conversion devices (devices) within the city of Montgomery, Alabama. The investigation continued into 2024 and includes cases involving both the possession and distribution of these devices. The devices include both metal devices and 3-D printed plastic devices. The devices were located on Glock pistols and AR type rifles and pistols, which were originally manufactured as semi-automatic firearms. The devices manufactured for Glock pistols are commonly referred to as "Glock switches" or "boxes", because one variant, which is box shaped and protrudes from the rear of the slide, allows the user to switch between semi-automatic and automatic firing. Another

1

variant for Glocks is referred to as "invisi-switch" or "invisible" because the device appears to be a standard Glock slide cover, does not protrude from the rear of the slide, and is difficult to detect without proper training. The "invisible" type devices do not allow the user to switch between semi-automatic and automatic firing, and once installed only allows the firearm to function as a machine gun. The "invisible" type devices are commonly made of 3-D printed plastic. The devices for AR type firearms are commonly referred to as "drop-ins" and "auto-sears". Some individuals mistakenly use "switch" and "drop-in" interchangeably to refer to both Glock and AR type devices. When installed properly, the devices cause the firearms to function as machine guns. Title 26 of the United States Code defines a machine gun as "any weapon which shoots, is designed to shoot, or can be readily restored to shoot, automatically more than one shot, without manual reloading, by a single function of the trigger," and also includes "any part designed and intended solely and exclusively, or combination of parts designed and intended, for use in converting a weapon into a machinegun." The machine gun conversion devices are themselves therefore a "machine gun" for the purposes of Title 26. Title 18 U.S.C. 922(o) makes it unlawful to possess or transfer machineguns. Title 18 U.S.C. 921 defines a machinegun as having the meaning given such term in Title 26 U.S.C. 5845(b).

3.      This is affidavit is in support of a Complaint for JAQUEZ MYRICK, for violation of Title 18 of the United States Code, Section 922(o), Possession of a Machinegun. For the reasons stated below, I submit there is probable cause to believe that on November 10, 2024 MYRICK possessed a machinegun.

## PROBABLE CAUSE

4.      On November 10, 2024, I was contacted to respond to a mass shooting incident at Tuskegee University, located in Tuskegee, Alabama. I was advised several people were shot, with

2

two possibly being deceased. I arrived at Tuskegee University at approximately 0515 hours and met with the Alabama Law Enforcement Agency (ALEA), State Bureau of Investigation (SBI), as well as Tuskegee Police Department (TPD).

5. On November 10, 2024, at approximately 0058 hours, Macon County 911 received a report of shots fired on the campus of Tuskegee University. TPD was contacted to assist, and TPD Officer Alan Ashley was one of several law enforcement officers dispatched. Officer Ashley arrived in the area of the West Commons apartments and observed a large amount of people in the parking lot. Officer Ashley said he began hearing gunshots immediately upon arrival, but was unable to drive his patrol vehicle into the parking lot due to the amount of people and other vehicles. Officer Ashley said he then exited his vehicle and ran toward the gunfire.

6. As Officer Ashley moved through the parking lot, he observed a black male laying on the ground and not moving. Officer Ashley said he found the male on the ground to be deceased from a possible gunshot wound. Officer Ashley said he then observed another black male on foot in the parking lot, and that the black male was armed with a Glock pistol. Officer Ashley said he then detained the black male and retrieved the pistol from him. Officer Ashley identified the individual as black male Jaquez Myrick, D.O.B: 09/25/1999. The pistol was found to be loaded with a thirty round magazine containing nine rounds of ammunition, as well as a round loaded into the chamber of the pistol.

7. I obtained the firearm and observed it to be a Glock, model 17, 9mm pistol, S/N: RMG231. I observed the firearm to be equipped with a black in color "invisi-switch" type MCD. During a field examination, I found the pistol to function as a machinegun.

8. Myrick was taken to TPD, where SBI Special Agent (SA) Nicholas Moscona and I conducted an interview with him. Myrick was advised of his Miranda rights and agreed to speak

to law enforcement. Myrick said he came to Tuskegee from Montgomery, looking for a party. Myrick said he and his friends were at the location for approximately five minutes when he began hearing gunfire. Myrick said he went into the parking lot looking for one of his friends, at which point he was arrested by an officer.

9. When asked about the Glock pistol he possessed, Myrick said he purchased the pistol from a pawn shop in Tampa, Florida. Myrick denied being aware of any modifications made to the pistol. Myrick said he discharged the firearm on November 9, 2024, and that the firearm shot normal. Myrick denied discharging the firearm during the November 10, 2024, shooting. Myrick was asked about his knowledge of MCDs, to which he said he has seen YouTube videos showing them being discharged, and "that bitch spittin". At this point in the interview Myrick was confronted with inconsistencies with his statement.

10. Myrick then confessed that he purchased the MCD found on his Glock pistol approximately one to two years ago and installed it on the pistol. Myrick said he purchased the device from an individual on Discord, and that the individual shipped a bag containing several MCDs to him. Myrick said he had the package delivered to a vacant residence. Myrick said he discarded the remaining devices after installing one on his pistol.

11. Through my training and experience with MCDs, I found Myrick's statement about when he purchased and installed the device to be unusual. The device located on Myrick's pistol is plastic and appears to be 3D printed. A key component of Glock type MCDs is what is commonly referred to as the "leg" of the device, which is also composed of plastic. I know that the plastic 3D printed devices for Glocks typically break easily due to the stress and heat generated when pistols are discharged. I also know that the stress and heat generated will break the "leg" or

cause it to disconnect from the device. This typically occurs after minimal use, making Myrick's statement about when he installed the device suspect.

12. Myrick was asked again about discharging his firearm during the shooting. Myrick then confessed to discharging the Glock but denied shooting at anyone.

13. Based on my training and experience, I know that Jaquez Myrick did violate Title 18 U.S.C. § 922(o) Possession of a Machinegun.

Respectfully submitted,

Andrew Erdmann
SPECIAL AGENT
BUREAU OF ALCOHOL, TOBACCO,
FIREARMS and EXPLOSIVES (ATF)

Subscribed and sworn to before me
on the 11th day of November, 2024:

STEPHEN M. DOYLE
UNITED STATES MAGISTRATE JUDGE

5